UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JASON L. GASE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO. 1:23-cv-00295-SLC |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, *sued as Martin O'Malley,* ) | |
| *Commissioner of the Social Security* ) | |
| *Administration*,[1] ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Plaintiff Jason L. Gase appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying his application under the Social Security Act (the "Act") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (ECF 1).[2] For the following reasons, the Commissioner's decision will be AFFIRMED.

## I. FACTUAL AND PROCEDURAL HISTORY

Gase applied for DIB and SSI in January 2020, alleging disability as of twenty years earlier, on January 1, 2000. (ECF 9 Administrative Record ("AR") 23, 309-20).[3] Gase was last insured for DIB on March 31, 2012 (AR 26), and thus, he had to establish that he was disabled as of that date for purposes of his DIB application. *See Stevenson v. Chater*, 105 F.3d 1151, 1154

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023, and thus, pursuant to Federal Rule of Civil Procedure 25(d), he is automatically substituted for Kilolo Kijakazi in this case. *See Melissa R. v. O'Malley,* No. 1:22-cv-02404-TAB-TWP, 2023 WL 8866397, at *1 n.1 (S.D. Ind. Dec. 22, 2023).

[2] The parties have consented to the exercise of jurisdiction by a Magistrate Judge. (ECF 17, 19).

[3] The AR page numbers cited herein correspond to the ECF-generated page numbers displayed at the top center of the screen when the AR is open in ECF, rather than the page numbers printed in the lower right corner of each page.

(7th Cir. 1997) (explaining that a claimant must establish that he was disabled as of his date last insured in order to recover DIB).

Gase's claim was denied initially and upon reconsideration. (AR 166-73, 194-200). On July 14, 2022, administrative law judge ("ALJ") Kathleen Winters conducted an administrative hearing, at which Gase, who was represented by counsel, and a vocational expert ("VE") testified. (AR 44-80). At the hearing, Gase amended his alleged onset date to January 21, 2020, thereby waiving his DIB claim. (AR 23, 48-49, 455; ECF 12 at 4).[4] On October 13, 2022, the ALJ rendered an unfavorable decision to Gase, concluding that he was not disabled because he could perform his past relevant work as a laborer, as well as a significant number of other unskilled, light-exertional jobs in the national economy, despite limitations caused by his impairments. (AR 23-37). The Appeals Council denied Gase's request for review (AR 6-17), at which point the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481.

On July 14, 2023, Gase filed a complaint in this Court appealing the Commissioner's final decision. (ECF 1). In his opening brief, Gase argues that the ALJ erred by failing to build a logical bridge from the evidence to the assigned residual functional capacity ("RFC"). (ECF 12 at 6).

On the date of the ALJ's decision, Gase was forty-six years old (AR 36); had an eleventh grade education (AR 57, 362); and had past relevant work as a laborer (AR 36; *see also* AR 362). Gase alleges disability due to an anxiety disorder; bipolar I disorder; post traumatic stress

---

[4] Given that Gase waived his DIB claim, the Court will hereinafter cite only the regulations applicable to his SSI claim, rather than both his DIB and SSI claims.

Also, there is a minor discrepancy in the ALJ's decision about the amended alleged onset date. On the first page of the decision, the ALJ states that Gase's amended alleged onset date is January 21, 2020, but on page four, she refers to it as January 26, 2020. (*Compare* AR 23, *with* AR 26). This five-day discrepancy, however, is immaterial to the outcome here.

disorder (PTSD); personality disorder, unspecified; hepatitis C; opioid use disorder; neuropathy; gastroesophageal reflux disease; spondylosis without myelopathy or radiculopathy, cervical region; radiculopathy, lumbar region; chronic pain syndrome; cervical, lumbar, and thoracic facet arthropathy; intercostal neuralgia; right thumb primary osteoarthritis; and liver disease. (ECF 12 at 5; *see also* AR 361).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed "only if [it is] not supported by substantial evidence or if the Commissioner applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record, but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Id.* (citations omitted). "Rather, if the findings of the Commissioner . . . are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

### III. ANALYSIS

*A. The Law*

Under the Act, a claimant seeking SSI must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed in substantial gainful activity, (2) whether he has a severe impairment, (3) whether his impairment is one that the Commissioner considers conclusively disabling, (4) whether he is incapable of performing his past relevant work, and (5) whether he is incapable of performing any work in the national economy. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); *see also* 20 C.F.R. § 416.920.[5] "[A]n affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled." *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (citation omitted). "A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Id.* (citation omitted). The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

---

[5] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks he can do despite his limitations. 20 C.F.R §§ 416.920(e), 416.945(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. *Id.* § 416.920(e).

*B. The Commissioner's Final Decision*

In the Commissioner's final decision, the ALJ found as a threshold matter that Gase last met the insured status requirements of DIB on March 31, 2012, and thus, that he had waived his DIB claim by amending his alleged onset date to January 2020. (AR 26). At step one of the five-step sequential analysis, the ALJ found that Gase had not engaged in substantial gainful activity since his amended alleged onset date. (*Id.*). At step two, the ALJ found that Gase had the following severe impairments: degenerative disc disease of the spine; asthma; major depressive disorder, moderate; general anxiety disorder; and opioid use disorder, moderate in early remission. (*Id.*). At step three, the ALJ concluded that Gase did not have an impairment or combination of impairments severe enough to meet or equal a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 27).

The ALJ assigned Gase the following RFC:

> [T]he claimant has the [RFC] to perform light work as defined in 20 CFR . . . 416.967(b) except the following: the claimant can frequently grip bilaterally. With occasional exposure to extreme cold, extreme heat, fumes, dusts, odors, gases, and poor ventilation. With work that can be learned in 30 days, or less, with simple routine tasks, simple work-related decisions, and routine work-place changes. He is able to remain on task, persist, and maintain in two-hour increments, with occasional interaction with coworkers, supervisors, and the general public.

(AR 29).

The ALJ determined at step four that given the foregoing RFC, Gase could perform his past relevant work as a laborer, which was light exertional. (AR 35). The ALJ alternatively found that Gase could perform a significant number of other unskilled, light-exertional jobs in the national economy, including inspector and hand packager, marker, and router. (AR 36-37). Accordingly, Gase's application for SSI was denied. (AR 37).

*C. The RFC Is Supported by Substantial Evidence*

Gase argues that the ALJ erred by failing to build a logical bridge from the evidence to her conclusion when assigning the RFC. (ECF 12 at 8). Ultimately, Gase's argument is unpersuasive.

1. <u>Applicable Law</u>

The RFC is "the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," meaning eight hours a day, for five days a week. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (bold emphasis omitted). That is, the "RFC does not represent the *least* an individual can do despite his or her limitations or restrictions, but the *most*." *Id.* (footnote omitted); *see also Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004); 20 C.F.R. § 416.945(a)(1).

> The [RFC] assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence.

SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see* 20 C.F.R. § 416.945(a)(3).

When determining the RFC, the ALJ must consider all medically determinable impairments, mental and physical, even those that are non-severe. 20 C.F.R. § 416.945(a)(2); *see also Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008). "The ALJ must evaluate the record fairly. Thus, although the ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling." *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) (citations omitted); *see also John B. v. Saul*, No. 2:18-cv-00223-JVB-JEM, 2019 WL 4233744, at *2 (N.D. Ind. Sept. 5, 2019).

"The administrative law judge is not required or indeed permitted to accept medical

6

evidence if it is refuted by other evidence—which need not itself be medical in nature . . . ." *Simila v. Astrue*, 573 F.3d 503, 515 (7th Cir. 2009) (ellipsis in original) (citation, brackets, and emphasis omitted); *see also Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 356 (7th Cir. 2005). "[T]he determination of a claimant's RFC is a matter for the ALJ alone—not a treating or examining doctor— to decide." *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014) (citation omitted); *see* 20 C.F.R. § 416.945(e).

2. Evidentiary Deficit

Gase first argues that the ALJ created an evidentiary deficit by failing to rely on a medical opinion when assigning the physical RFC. (ECF 12 at 8-9). Specifically, Gase asserts that because the ALJ found the opinions of the state agency reviewing physicians, B. Whitley, M.D., and Mark Ruiz, M.D., and the opinion of the consultative examining physician, Scott Ehmen, M.D., "not persuasive" (*id.* at 9-10 (citing AR 34)), the physical RFC she assigned is unsupported.

Not so. While "an ALJ must consider the entire record [in forming an RFC], the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians." *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007). The mere fact that the ALJ discounted these physicians' opinions about Gase's limitations and crafted a physical RFC from the totality of the evidence of record is not grounds for remand. To reiterate, "[t]he task of assessing a claimant's RFC is reserved to the Commissioner." *David K. v. Kijakazi*, No. 20-cv-1743, 2022 WL 2757695, at *4 (N.D. Ill. July 14, 2022) (citing *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995)).

Here, the ALJ adequately considered the totality of the evidence when assessing the RFC, including the diagnostic and clinical findings of record, the treatment that Gase did or did not

undergo, the medications he was prescribed and their effectiveness, his activities of daily living and functional abilities, and his statements and presentation to providers. (AR 26-28, 30-33); *see Donna M. v. Kijakazi*, No. 20 CV 1510, 2023 WL 3305129, at *4 (N.D. Ill. May 8, 2023) (rejecting the claimant's "evidentiary deficit" argument where "the ALJ offer[ed] pages of analysis regarding [the claimant's] medical history pursuant to the record" and explained that she arrived at the RFC based on the claimant's improvement with medication and the lack of significant clinical findings). The ALJ concluded that overall such evidence was not consistent with Gase's claim of disabling functional limitations. (AR 26). Thus, Gase's claims of an "evidentiary deficit" are defied by the ALJ's thorough consideration of the totality of the evidence. *See Laughton v. O'Malley*, No. 1:23-CV-35-HAB, 2024 WL 748752, at *5 (N.D. Ind. Feb. 22, 2024) ("[T]here is not an evidentiary deficit simply because an ALJ rejects the opinions of the agency reviewing and consulting physicians. Rather, the question is whether the rest of the record supports the ALJ's RFC assessment."); *see Ronald L. v. Kijakazi*, No. 20 CV 7335, 2023 WL 3689457, at *6 (N.D. Ill. May 26, 2023) ("By articulating the evidence supporting her RFC finding, the ALJ filled any dearth created in the absence of adopted medical opinions.").

Nevertheless, given that Gase also specifically challenges the ALJ's discounting of certain medical source opinions of record, the Court will turn to those arguments now.

    3. <u>Dr. Whitley and Dr. Ruiz</u>

Dr. Whitley and Dr. Ruiz, the state agency physicians who reviewed Gase's record in July 2020 and March 2021, respectively, both found that he did not have a severe physical impairment, and thus, they did not assign him *any* physical limitations. (AR 120-21, 154-56). Yet, the ALJ found Gase's physical impairment severe based on diagnostic and clinical findings, and as such, assigned a physical RFC *more* conservative than Dr. Whitley and Dr. Ruiz. (AR 26,

29). "[A]n ALJ does not err when [she] finds a claimant to have an RFC which is more limited than that ascribed by the medical experts." *Poole v. Calvin*, No. 12 C 10159, 2016 WL 1181817, at *8 (N.D. Ill. Mar. 28, 2016) (citing *Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir. 2010)); *see also Candice A. Z. v. Kijakazi*, No. 19 C 8174, 2021 WL 3187783, at *8 (N.D. Ill. July 28, 2021) ("It was not error for the ALJ to assess an RFC consistent with but more conservative than a state agency physician.").

Put simply, these state agency physician opinions certainly do not support Gase's argument that he is disabled due to his physical impairments. Rather, they support the ALJ's outcome that Gase is *not* disabled based on his physical impairments in that they found Gase could perform *all* work. *See Poole*, 2016 WL 1181817, at *9 ("[B]oth Drs. Panepinto and Pilapil concluded that Plaintiff's impairments were not severe and therefore did not restrict Plaintiff's functional capacity. Rather than simply crediting these physicians' statements, however, the ALJ partially credited Plaintiff's statements that his symptoms limited his [RFC] to an extent greater than that suggested by the medical experts' opinions.").

4. Dr. Ehmen

As to Dr. Ehmen, he issued the following medical source statement after examining Gase in July 2020:

> Patient is able to communicate effectively and will not have difficulty maintaining focus and concentration. Patient is able to stand/walk at least 2 hours in an 8 hour day. Due to back pain should be able to walk and stand majority of day with occasional rest breaks. Patient is able to lift over 10 pounds occasionally up to 20-30 pounds with both arms. Patient is able to lift under 10 pounds frequently. Patient may need to alternate sitting and standing occasionally. Patient is able to perform fine and gross movements effectively. Repetitive gripping with the right hand may result in increased pain but no significant fine motor limitations noted[.] Gait is steady without use of cane, no leg weakness."

(AR 701). Ultimately, the ALJ found Dr. Ehmen's opinion "not persuasive overall," assessing

that "the non-specific nature of the opinion belies its supportability." (AR 34). The ALJ elaborated that it was unclear in Dr. Ehmen's opinion how long Gase could stand or walk in an eight-hour workday given that Dr. Ehmen did "not define what a majority of the workday would be" or whether a sit-to-stand option was needed. (*Id.*). The ALJ further stated that even if Dr. Ehmen did intend a sit-to-stand option, such option was inconsistent with Gase's improvement through physical therapy and pain management treatment, "including 50-70% relief from his symptoms" and his "lack of any significant motor strength, sensation or reflex deficits." (*Id.* (citations omitted)). The Court will address Gase's arguments about the ALJ's consideration of Dr. Ehmen's opinion in three parts—Gase's standing and walking ability, a sit-to-stand option, and repetitive gripping limitations.

    a. <u>Standing and Walking Ability</u>

Gase argues that rather than finding Dr. Ehmen's opinion unpersuasive, the ALJ should have re-contacted Dr. Ehmen to obtain clarification about Gase's standing and walking ability. (ECF 12 at 11).

"When an ambiguity in the evidence must be resolved in order for the ALJ to determine whether the claimant is disabled, the ALJ has a duty to re-contact the medical source for clarification." *Ridinger v. Astrue*, 589 F. Supp. 2d 995, 1008 (N.D. Ill. 2008) (citing *Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004)). Having said that, "[t]he ALJ, at [her] discretion, may refrain from re-contacting a medical expert when sufficient evidence exists for [her] to make a disability determination." *Id.* (citing *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004)); *see also Palmer v. Saul*, 779 F. App'x 394, 398 (7th Cir. 2019) (stating that an ALJ "may," at the ALJ's discretion, recontact a medical source but is not required to do so).

Here, the ALJ was under no obligation to re-contact Dr. Ehmen, as she found sufficient

10

evidence upon which to make Gase's disability determination as to his standing and walking abilities. (*See* AR 30, 32). The ALJ discussed at length the providers' treatment notes and physical therapy and pain management records pertaining to Gase's back pain and gait. (*Id.* (citations omitted)). For example, the ALJ noted that by August 2020, Gase was discharged from physical therapy after reporting his back was doing better overall, his posture had improved, and he was riding his bike an hour a day. (AR 32 (citing AR 671)). The ALJ further considered that Gase's gait was predominantly described as normal by his treating providers. (AR 30 (citations omitted)). In fact, as the ALJ highlighted, Dr. Ehmen's examination revealed "negative straight leg raise testing, . . . . normal and steady gait, normal tandem gait, normal pace without a cane or assistive device used, normal heel/toe walking, no ataxic gait and ability to squat." (AR 32-33 (citing AR 701)).[6]

Given the ALJ's thorough discussion of all of the evidence of record pertaining to Gase's standing and walking abilities, the ALJ did not commit reversible error by assigning a physical RFC without re-contacting Dr. Ehman.

    b. Sit-to-Stand Option

Gase also argues that the ALJ erred by "play[ing] doctor" when rejecting Dr. Ehmen's opinion to the extent it included a sit-to-stand option. (ECF 12 at 11-12). Gase asserts that the pain management records the ALJ cites as evidence of his improvement—that is, "50-70% relief from his symptoms"—noted "a multitude of limitations." (*Id.* at 12). He contends that the ALJ impermissibly played doctor by assuming 50% relief from symptoms rendered a sit-to-stand option unnecessary. (*Id.*).

---

[6] In the assessment portion of his opinion, Dr. Ehmen even commented that Gase's "[c]hronic lower back pain is not disabling . . . ." (AR 701).

Gase was discharged from physical therapy in August 2020 after attending five treatments and missing four. (AR 671). As already stated, upon discharge Gase's back was improved overall, his posture was more upright, his pain had reduced to 4/10 on average, and he was riding his bike an hour a day. (*Id.*). Thereafter, Gase continued with pain management treatment through November 2020, rating his pain at his last visit as 7/10 on average and stating that it was aggravated by activities such as walking and standing. (AR 790). As the ALJ relayed, Gase's clinical examination by a pain management provider in March 2020 noted spinal tenderness, muscle spasms, positive straight leg raise testing, but normal gait and station. (AR 33, 738-39). Gase further reported, however, that medication relieved his pain by "60-70%" with no side effects. (AR 734). The ALJ further noted that there was no evidence that Gase received treatment for his spinal complaints after November 2020. (AR 32).

The Court views the ALJ's reasoning for rejecting a sit-to-stand option as somewhat vulnerable. "[W]hile the ALJ assessed that [Gase] improved during the relevant period, the ALJ did not explain how improvement, without more, equates to the ability to work full time." *Tritch v. Kijakazi*, No. 1:20-CV-00331-SLC, 2021 WL 4438188, at *10 (N.D. Ind. Sept. 28, 2021) (citations and internal quotation marks omitted). "[T]here can be a great distance between a patient who responds to treatment and one who is able to enter the workforce." *Meuser v. Colvin*, 838 F.3d 905, 913 (7th Cir. 2016) (citation omitted). Nevertheless, the ALJ's reasoning when rejecting a sit-to-stand option in this case does not necessitate a remand.

To explain, the ALJ asked the VE at the hearing whether "a further restriction of work with an option to change positions no more frequently than every 30 minutes while remaining on task" would change the VE's answer about Gase's ability to perform his past work as a laborer. (AR 75). The VE responded that it would not. (*Id.*). The ALJ then asked the VE whether it

would change the VE's answer about the other unskilled, lighter-exertional jobs she cited—inspector and hand packager, marker, and router. (AR 75-76). The VE responded that these jobs could be performed but the numbers would be reduced to a total of 499,000 jobs in the national economy. (*Id.*). Given this testimony, even if the ALJ had credited Dr. Ehmen's opinion that Gase "may need to alternate sitting and standing occasionally," the outcome would not change. *See Milhem v. Kijakazi*, 52 F.4th 688, 696-97 (7th Cir. 2022) (finding that 89,000 jobs in the national economy was a significant number); *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." (collecting cases)). Consequently, Gase's pursuit of a remand based on Dr. Ehmen's opinion with respect to a sit-to-stand option does not constitute a basis for remand.

    c. Repetitive Gripping

In the RFC, the ALJ included a limitation that Gase "can frequently grip bilaterally." (AR 29). Gase argues that in assigning this hand limitation the ALJ ignored Dr. Ehmen's opinion that while Gase "is able to perform fine and gross movements effectively[,] [r]epetitive gripping with the right hand may result in increased pain . . . ." (AR 701; *see* ECF 12 at 13). As such, Gase contends that the ALJ played doctor when he "failed to rely on any medical opinion when determining [his] hand limitations." (ECF 12 at 13).

But neither Dr. Ehmen nor any other physician of record actually restricted Gase from performing repetitive gripping. As such, Gase fails to produce any medical source opinion assigning him hand limitations more restrictive than the limitation crafted by the ALJ. Of course, "the primary responsibility for producing medical evidence demonstrating the severity of impairments remains with the claimant." *Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 448

(7th Cir. 2004) (citing 20 C.F.R. § 416.912(c)). "It is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove [his] claim of disability." *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004) (citing 20 C.F.R. § 404.1512(c); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)). Consequently, given the record presented, the ALJ's assessment of Gase's hand limitations is supported by substantial evidence.

    5. Mental Health Opinions

Finally, Gase argues that the ALJ similarly failed to rely on a medical source of record when assigning the mental RFC, creating an evidentiary deficit. (ECF 12 at 13-14). This argument, too, is unpersuasive.

The ALJ wrote a lengthy paragraph on the opinions of the state agency psychologists, Maura Clark, Ph.D., and William Shipley, Ph.D, who reviewed Gase's record in September 2020 and March 2021, respectively. (AR 35; *see* AR 123-25, 158-59). These doctors opined that Gase could understand, remember, and carry out detailed, but not complex, tasks; relate on a superficial and ongoing basis with coworkers and supervisors; attend to tasks for a sufficient period to complete tasks; and manage the stresses involved with detailed work-related tasks. (AR 125, 159). The ALJ found these opinions "partially persuasive" as follows:

> The finding the claimant can work at a semi-skilled level is not consistent with the claimant's diagnosis of a major depressive disorder and general anxiety disorder with ongoing treatment, along with the claimant's testimony of daily associated symptoms. The finding the claimant can only superficially relate with others is not persuasive, as it is not consistent with symptoms of depression and anxiety that waxed and waned, along with signs of a varied mood and affect, which reflected periods of noted improvement. The remainder of the opinion is persuasive, as it is supported with an in-depth explanation regarding the basis for the overall opinion, including noting the claimant's activity level of being able to make simple meals, do laundry, follow instructions well and get along with others.

(AR 35 (internal citations omitted)).

The ALJ also discussed at length the opinion of Candace Martin, Psy.D., who examined Gase in June 2016. (*Id.*). Dr. Martin opined:

> [The claimant] reports to have been diagnosed with bipolar disorder as a child. . . . The claimant displays traits of bipolar disorder with his severe mood swings, poor sleep and appetite, report of mind racing, feelings of paranoia, and difficulty staying focused on one project at a time. The claimant also reports to suffer with traits of [PTSD] as a result of his experiences in prison.
>
> His performance on the [mental status examination] suggests variable cognitive strengths and weaknesses. However, again, it should be noted that his entire conversation and performance during this examination was fraught with somnolence. Therefore, it is questioned whether his performance was actually reflective of his typical functioning level or not. Further it was not possible to gain adequate knowledge regarding his ability to concentrate and stay on a task or understand or remember tasks on the job. By his report only, it is suggested that he would most likely have difficulty relating to coworkers or boss in any environment in which he would not feel safe around others.

(AR 495). The ALJ found Dr. Martin's opinion "not persuasive" for several reasons. (AR 35). She considered that the opinion was very remote in time—three-and-a-half years before Gase's amended alleged onset date—and that Dr. Martin questioned whether Gase's performance on the exam was actually reflective of his typical functioning level due to the exam being "fraught with somnolence." (*Id.*). The ALJ commented that "the non-specific nature of the opinion belies its supportability." (*Id.*). She also viewed the cognitive and social limitations therein as "not consistent with the claimant's mainly benign mental status examination findings, including signs of a varied mood/affect and intact cognitive functioning." (*Id.* (citations omitted)).

Gase does not materially challenge the ALJ's discounting of the opinions of Dr. Martin and the state agency psychologists. Instead, Gase cites a treatment note by his family practitioner in October 2019 and a note by the Bowen Center in November 2020 in an effort to show that his mental health symptoms are more severe than found by the ALJ. (ECF 12 at 13-14 (citing AR 507, 772)). He contends that the ALJ impermissibly "ignored entire lines of contrary evidence"

by failing to address these notes, his bipolar disorder diagnosis, and his statement that his anxiety and other mental health limitations caused him to lose jobs in the past. (*Id.*). Similar to his physical RFC challenge, Gase asserts that the ALJ "determined the mental RFC based solely on the ALJ's own unqualified opinion." (*Id.* at 14).

While an ALJ may not disregard an entire line of evidence that is contrary to her ruling, she "need not discuss every piece of evidence in the record." *Golembiewski*, 322 F.3d at 917 (citations omitted). The family practitioner's note dated October 30, 2019 (several months prior to Gase's amended alleged onset date), reflects an "initial visit" for complaints of asthma and anxiety, with Gase's anxiety described as "severe." (AR 507). The doctor adjusted Gase's medications but assigned him no mental health limitations and did not schedule him for follow-up care for his anxiety. (*Id.*). The Bowen Center note dated October 11, 2019, also documented an initial intake visit, where Gase self-described his anxiety as "severe." (AR 521). A psychiatric evaluation that same month at the Bowen Center revealed an appropriate affect with an overall dysphoric mood, fair attention and concentration, fair to good memory, and cooperative attitude. (AR 574, 577). Gase was diagnosed with opioid dependence, in remission; other stimulant dependence in remission; sedative, hypnotic or anxiolytic dependence, in remission; and anxiety disorder, unspecified. (AR 576). In short, these particular notes do not rise to an entire line of contrary evidence to the ALJ's ruling. There is no real disagreement here, as the ALJ found Gase's general anxiety disorder to be a "severe impairment" at step two and went on to assign him mental health limitations in the RFC. (AR 26, 29).

Moving on, Gase points to a Bowen Center note dated November 21, 2019, where he told the provider that he lost his previous job due to anxiety. (ECF 12 at 14 (citing AR 548)). But a Bowen Center note from the month prior indicates that Gase "[s]truggles with jobs due to drug

16

use." (AR 577; *see also* AR 578 ("Has had jobs but not many are steady due to drug use.")). As such, the note that Gase cites does not, standing alone, rise to an entire line of evidence contrary to the ALJ's ruling. In any event, the ALJ cited the Bowen Center notes throughout her decision, indicating that she *did* review this evidence. (*See* AR 26, 28, 30-31, 33, 35 (each containing cites to Bowen Center records dated October 11, 2019, to February 19, 2020, located at "6F")).

Gase next points to a Bowen Center note dated November 10, 2020, reflecting that he told the provider he "was doing good but for a few weeks has been having episodes where he thinks bugs are crawling in and on him . . . ." (ECF 12 at 14 (citing AR 772)). Yet, a mental status exam revealed that he was cooperative, demonstrated appropriate behavior, irritable mood, fair judgment and insight, good attention and concentration, and no delusions or ideations. (AR 774-75). The provider adjusted his medications. (AR 776). The ALJ cited the Bowen Center notes for this time period, too, throughout her decision, indicating that she also reviewed this evidence. (*See* AR 28, 30-31, 33, 35 (each containing cites to Bowen Center records dated October 22, 2019, to November 10, 2020, located at "12F")). Regardless, this note also does not rise to an entire line of contrary evidence.

As a final volley, Gase asserts that the ALJ erred by failing to address his diagnosis of bipolar disorder. (ECF 12 at 14 (citing AR 572, 699, 1194)). Gase's first citation to such evidence reflects his self-report to providers that he was diagnosed with bipolar disorder in the past. (AR 572). The second citation is to Dr. Ehmen's examination report, which simply included bipolar disorder in a list of Gase's medical history. (AR 699). The third cite, too, reflects a "History of bipolar disorder." (AR 1194). Notably, Gase does not cite to a medical source of record who actually independently diagnosed him with a bipolar disorder.

Regardless, "[t]he mere diagnosis of an impairment does not establish that the impairment

17

affects the individual's ability to perform basic work activities." *Johnson v. Colvin*, No. 2:13-CV-138-PRC, 2014 WL 4722529, at *4 (N.D. Ind. Sept. 22, 2014) (collecting cases); *see also Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) (articulating that the issue "is not the existence of these various conditions . . . but their severity and, concretely, whether . . . they have caused her such severe pain that she cannot work full time"). The ALJ made clear at step two that she was "sensitive that mental conditions affect the claimant's entire functionality and that diagnoses of conditions can vary from doctor to doctor," and that she "considered the claimant's entire mental functionality . . . , regardless of diagnosis nomenclature, in determining the [RFC] and paragraph B criteria limitations." (AR 26-27). The ALJ then reiterated this in a subsequent paragraph, emphasizing that she was "cognizant of the overlap in symptomatology between different mental impairments and the inherently subjective nature of psychological impairment diagnoses," and thus, that "psychological symptoms and their effect on functioning are considered regardless of diagnostic label." (AR 27). As such, the Court is assured that the ALJ sufficiently considered Gase's various mental health diagnoses and symptoms, and then minimally articulated her reasoning when assigning the mental RFC. *See Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 787 (7th Cir. 2003) ("[E]ven a 'sketchy opinion' is sufficient if it assures us that an ALJ considered the important evidence and enables us to trace its reasoning." (citing *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985)).

In sum, none of Gase's arguments challenging the mental and physical RFC assigned by the ALJ are availing. "Though [Gase] may have disagreed with the ALJ's RFC assessment, such determinations are reserved exclusively to the Commissioner." *Johansen v. Barnhart*, 314 F.3d 283, 289 (7th Cir. 2002) (citation omitted); *see* 20 C.F.R. § 416.945(e). The ALJ fairly evaluated Gase's impairments and assessed an RFC, supporting it with substantial evidence and minimally

articulating her reasoning in the process. She did not commit reversible error by playing doctor or ignoring important evidence. Consequently, the Commissioner's final decision will be affirmed.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED. The Clerk is DIRECTED to enter a judgment in favor of the Commissioner and against Gase.

SO ORDERED.

Entered this 25th day of July 2024.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge